IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MERCHANTS & FARMERS BANK,      )
                               )
        Appellant,             )
                               )
v.                             )     CV-96-PT-2762-W
                               )
DONALD DERRICK COBB AND        )
SHARON TAYLOR COBB,            )
                               )
        Appellees.             )

**ENTERED**

JAN 2 9 1997

## MEMORANDUM OPINION

This is an appeal, pursuant to 28 U.S.C. § 158(a), from the judgment and decision of

the United States Bankruptcy Court for the Northern District of Alabama (Case No. 94-71366-

CMS-7). The matter came before the court on a motion by creditor, Merchants & Farmers

Bank, to enjoin and stay a state court lawsuit filed against the bank by Derrick Cobb, the

debtor.[1]  The Bankruptcy Court denied the motion.

### BACKGROUND AND PROCEDURAL HISTORY

The Bankruptcy Judge took the request under submission on an agreed stipulation of

facts and the pleadings of the parties. The court's findings of fact are undisputed and will be

adopted substantially herein.

On January 4, 1994, Derrick Cobb signed an agreement to borrow $9,115.68 from

---

[1] Derrick Cobb and his wife Sharon Taylor Cobb were both debtors in the Chapter 7 bankruptcy proceeding. Only Derrick Cobb is a plaintiff in the state court action.

1

Merchants & Farmers Bank (Merchants and Farmers; the Bank), securing the loan with the certificate of title to a 1985 Ford Ranger XLT truck. The agreement obligated Cobb to pay the bank 10.95 percent interest and principal in 48 monthly installments of $189.91 each, beginning February 15, 1994.

The Cobbs filed for Chapter 7 bankruptcy on July 11, 1994. Schedule B[2] of the Cobbs' schedules filed with their petition showed that they had no contingent or unliquidated claims. Moreover, the Cobbs did not claim any prepetition causes of action, or proceeds, as exempt from the Bankruptcy estate on their Schedule C[3]. The Cobbs did, however, list Merchants & Farmers as a secured creditor for $7,500.00 on the Ford truck on their Schedule D[4]. On their Chapter 7 Individual Debtor's Statement of Intention, the Cobbs said that they intended to reaffirm the debt on the truck to Merchants & Farmers pursuant to 11 U.S.C. § 524.

Additionally, the Cobbs said that they would surrender a mobile home, at Route 1, Kennedy, Alabama that was security for a separate, approximate $24,000.00 loan from Merchants & Farmers. The Cobbs had also listed an acre of real estate at the Route 1, Kennedy address in their property schedules as securing the $24,000.00 loan. On August 17, 1994, the Bankruptcy Court granted Merchants & Farmers' motion for relief from stay to enforce its security against the real estate.

On July 25, 1994, Merchants & Farmers filed a proof of claim in the Cobb bankruptcy

---

[2] Schedule B - Personal Property.

[3] Schedule C - Property Claimed as Exempt.

[4] Schedule D - Creditors Holding Secured Claims.

2

for the $7,450.98 still owing on the truck and for other indebtedness. Subsequently, on

September 14, 1994, the Cobbs entered a reaffirmation agreement to repay Merchants &

Farmers the $7,450.98 principal balance on the loan "in accordance with the terms and

conditions of the original instrument and security agreement" -- 10.95 percent interest with

payments of $189.91 per month. The agreement reflected the security interest in the truck and

stated:

> It is the opinion of the Debtors that the value of said Collateral to them exceeds
> the amount of their indebtedness due Merchants & Farmers Bank.

The agreement also stated:

> The Debtors, by acceptance of this Reaffirmation Agreement, do accept this
> reaffirmation as a complete settlement of any claim or claims they have had
> against Merchants & Farmers Bank and agree that this Reaffirmation Agreement
> and the instruments executed in accordance herewith constitute their entire
> agreement with Merchants & Farmers Bank and is executed under seal.

The Cobbs' bankruptcy attorney also signed the agreement and an additional

Declaration of Attorney for Debtors Reaffirmation Agreement with Merchants & Farmers

Bank. This "declaration" reflected that the attorney had represented the Cobbs throughout the

reaffirmation process and had "fully disclosed and explained" the effect of the agreement to

them.

On September 16, 1994, the Trustee filed his Final Report of Trustee in No Asset Case

and Abandonment of Property showing that he neither received any property nor paid any

monies out on account of the bankruptcy estate. This report also suggested that the Trustee

made a diligent inquiry into the estate property and that, to the best of his knowledge, no

assets existed in the estate beyond the exemptions lawfully claimed by the Cobbs.

On October 12, 1994, the court entered an order discharging the Cobbs of all personal liability for their dischargeable debts existing July 11, 1994 when they filed their case. The court approved the trustee's report and closed the Cobbs' case on November 2, 1994.

Approximately fifteen months later, Derrick Cobb sued Merchants & Farmers and Life Insurance Company of Alabama in Lamar County Circuit Court.[5] Cobb's complaint alleged that Merchants & Farmers misrepresented to him that the credit life insurance the bank would place with Life Insurance Company of Alabama insured the amount of his unpaid debt on the truck when it insured "a substantially higher amount, causing substantially higher premiums to be paid."[6] The complaint further alleged that Merchants & Farmers misrepresented that Cobb paid premiums to the insurer when the bank retained funds "in whole or in part" itself. Nothing in the complaint, the stipulation of facts, nor any other pleading, however, shows when the Cobbs say they discovered the alleged overcharge and the Bank's purported failure to reveal its premium retention.

On February 23, 1996, Merchants & Farmers filed a Motion in the Bankruptcy Court to enjoin and stay the state court action in what was then a closed Chapter 7 bankruptcy case. Merchants & Farmers alleged that Cobb's Lamar County lawsuit was "barred by [the Bankruptcy Court's] previous rulings and Orders in this Chapter 7 proceeding, and the provisions of Title 11 of the United States Code (Bankruptcy Code)." The bank asserted res judicata, collateral estoppel, and judicial estoppel barriers to the state court litigation.

---

[5] Cobb is represented by different counsel than who represented him in his bankruptcy proceeding.

[6] The complaint makes claims of breach of contract, fraud, breach of fiduciary duty, civil conspiracy, outrage, and unconscionability.

4

On April 3, 1996, Merchants & Farmers filed a Motion to Reopen Case "for the limited purpose of enforcing [the Bankruptcy Court's] previous Orders and rulings and the provisions of Title 11 of the United States Code" as requested in the motion for injunction or stay. In the motion, the Bank stated that the original January 4, 1994 installment credit contract was "the subject" of the Lamar County suit.

On April 12, 1996, the trustee filed a Notice of Withdrawal of Trustee's Final Report seeking permission to withdraw the report that stated that no assets existed to administer for creditors. Considering the Lamar County suit the trustee stated:

> The Trustee made his decision to file his final report based on the representations by the debtor that there were no assets to administer. In light of the subsequent information that has come to the Trustee's attention, it appears that the appropriate course of action is for the Trustee to withdraw his final report.

On May 7, 1996, the court granted the Bank's motion to reopen the case and granted the trustee's request to withdraw his final report.

The Bankruptcy Court entered an order on October 21, 1996, denying Merchants & Farmers' request to enjoin the state court action. In its Memorandum of Decision the court concluded that the state court lawsuit stemmed, at least in part, from prepetition dealings. Consequently, the court concluded, causes of action had arisen by the petition date and thus were property interests that became property of the Cobbs' bankruptcy estate. 11 U.S.C. § 541(a).[7] The court further ruled that the bankruptcy estate owns any proceeds from the state

---

[7] 11 U.S.C. § 541(a) provides:
> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>> (1) Except as provided in subsections (b) and (c)(2) of this

5

court suit based on prepetition transactions because the Cobbs did not disclose any prepetition causes of action against the bank.[8]  As such, the court concluded, the trustee is the proper party/plaintiff to pursue such causes of action.

The court additionally ruled that the trustee's failure to raise the causes of action in the bankruptcy case cannot be a bar to the trustee's litigation of prepetition claims against the bank because the trustee had no knowledge of the causes of action.  The court did not accept the Bank's contention that it should characterize the Cobb lawsuit as a counterclaim to the bank's proof of claim.  Since the trustee knew nothing of the alleged misconduct, the court ruled, he did not have the opportunity to raise the allegations during the bankruptcy proceedings.  The court concluded, therefore, that no legal theories bar litigation of these issues by the trustee.

The court further found that causes of action from postpetition dealings, if any, belong to the Cobbs.  As such, the court held, res judicata, collateral estoppel and judicial estoppel based on bankruptcy are affirmative defenses for the bank to plead against the Cobbs in state court.  Existence of these defenses, it reasoned, does not create a federal cause of action nor do they require federal intervention.

The court next found that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited the court from issuing an injunction because the case did not fit any of the limited exceptions.  Given the procedural posture of the case, the court concluded that Merchants & Farmers failed to make a "strong and unequivocal showing" that the bankruptcy court already decided the

> section, all legal or equitable interests of the debtor in property
> as of the commencement of the case. . . .

[8] The court ruled that any causes of action arising after the Chapter 7 was filed on July 11, 1994 are the property of the Cobbs, not the estate.

6

issues Cobb seeks to enjoin. Specifically, the court found the state court suit to be a non-core proceeding that could exist independently of the bankruptcy case. Additionally, the court classified the state court suit as only "related to" the bankruptcy case over which the court had nonexclusive jurisdiction. 28 U.S.C. § 1334(b).[9]  Consequently, the court ruled, the state court shared coequal jurisdiction over matters related to bankruptcy. Since Merchants & Farmers had not asked the court to hear the lawsuit, but only requested an injunction, the court declined to enjoin or stay the state court suit. The court did, however, direct the trustee to evaluate the lawsuit and any potential prepetition causes of action for the Cobbs' creditors and to act appropriately.

## CONTENTIONS

Merchants & Farmers contends that Cobb should have raised his state court claims in his previously filed bankruptcy action as a counterclaim to Merchants & Farmers' proof of claim. Merchants & Farmers further argues that his claims were mature, and properly within the scope of, their Chapter 7 proceeding. Res judicata, Merchants & Farmers contends, bars relitigation of not only those matters that the parties litigated but also any matters that could have been raised in the bankruptcy proceeding. Merchants & Farmers seeks, therefore, an injunction prohibiting the Cobbs from further pursuing the claims.

The Cobbs contend, however, that they could not have raised their claim in the

---

[9] 28 U.S.C. § 1334(a) confers original and exclusive jurisdiction of all cases under Title 11.  28 U.S.C. § 1334(b) states:

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings under title 11, or arising in or related to cases under title 11.

7

bankruptcy case because they were unaware that any claims existed then. The Cobbs argue

that an injunction would unreasonably punish them for their lack of knowledge. Moreover,

the Cobbs note, the bank can plead res judicata as an affirmative defense in the state court

action.

Merchants & Farmers second argument is that judicial estoppel bars the subsequent

state court action. Merchants & Farmers contends that a debtor discharged in a Chapter 7

bankruptcy case is judicially estopped from later asserting claims that it should have known of

and asserted at the time of the bankruptcy case. The Cobbs counter with the same arguments

proffered against Merchants & Farmers' res judicata claim.

The bank's third argument is that the Cobbs released all claims against the Bank when

they entered a reaffirmation agreement on the debt from which the state court action

purportedly arose. Merchants & Farmers contends that a Chapter 7 case and concurrent

reaffirmation agreement allow a debt to survive discharge, but abolish and discharge the

prepetition contract or agreement between the debtor and creditor. The only existing

agreement, Merchants & Farmers contends, arises from the reaffirmation agreement.

Merchants & Farmers argues that the Cobbs base their state court action on the original,

prepetition note and security agreement that the reaffirmation agreement nullified and

discharged. The Cobbs contend, however, that this claim is just a restatement of Merchants &

Farmers' estoppel argument.

Further, Merchants & Farmers contends that the Anti-Injunction Act, 28 U.S.C. §

2283, does not prohibit the court from enjoining Cobb's state court action. Merchants &

Farmers asserts that the case falls under either of two exceptions to the Act: (1) the "necessary

8

in aid of its jurisdiction" exception; or (2) to "protect or effectuate its judgments," a.k.a., the "relitigation" exception. The Cobbs contend, however, that their claim against Merchants & Farmers is not a core proceeding and, thus, the "necessary in aid of its jurisdiction" exception is inapplicable. Moreover, the Cobbs claim that federal courts should narrowly construe the "relitigation exception" because a state court is equally qualified as a federal court to apply the doctrine of res judicata.

## ANALYSIS

### I.

The court reviews the bankruptcy court's decision independently. In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993). The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review. In re Garfinkle, 672 F.2d 1340, 1344 (11th Cir. 1982). Its conclusions of law are reviewed de novo. In re James Cable Partners, L.P., 27 F.3d 534, 536 (11th Cir. 1994).

### II.

The general issue here is the extent and preclusive effects that Chapter 7 proceedings carry in subsequent litigation over related matters. With this understanding, a brief overview of Chapter 7 will be helpful to define the issues presented.

Chapter 7, used mostly by individuals with limited or no assets for their creditors, provides for liquidation. Debtors invoke Chapter 7 for equitably dispensing their limited assets to their creditors. Once invoked, debtors have a duty to reveal all potential claims to the

9

court. The debtor is obligated to specify his creditors and the amount and nature of his claims. In turn, the creditor receives notice that its rights are at stake.

A Chapter 7 creditor must file a proof of claim under Rule 3002 to secure "allowance" under 502. The purpose of the proof of claim is to enable the bankruptcy court to decide the quality and quantity of the debtor's liabilities so that all claims can be consolidated and paid in a pro-rata form. A claim filed under 501 is "deemed allowed" absent objection from the debtor, other creditors, or the trustee. The burden, therefore, is on a party who disputes a claim to disagree.

### III. Res Judicata

Merchants & Farmers contends that the claims made by Cobb in state court stem from pre-petition dealings with the Bank and are thus counterclaims against the Bank's secured claim, and should have been brought as such. The Cobbs' failure to address these issues before the entry of a discharge order, Merchants & Farmers contends, bars the subsequent state court action under a res judicata theory and justifies an injunction, citing Matter of Baudoin, 981 F.2d 736 (5th Cir. 1993).[10]

The issue becomes, therefore, whether the bankruptcy court proceedings precipitating the Cobbs' discharge should be entitled to res judicata effect on the subsequent state court action. Res judicata, or claim preclusion, applies to an order or judgment when four conditions are satisfied: (1) a final judgment on the merits, (2) rendered by a court of

---

[10] The Baudoin Court ruled that a trustee's subsequent lender liability action against a creditor constituted a counterclaim against that creditor's proof of claim. The court concluded that because counterclaims are core proceedings under 28 U.S.C. § 157(b)(2)(c), the trustee could have litigated his claims in bankruptcy court and was therefore barred by res judicata from pursuing these claims subsequent to discharge. For further discussion of Baudoin, see infra.

competent jurisdiction, (3) with substantial identity of parties, and (4) with the same cause of action presented in both suits. See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990). The court will address each element separately.

## A. Identity of the Parties

The Cobbs and Merchants & Farmers were both involved in the prior bankruptcy proceeding. Mr. Cobb and Merchants & Farmers are the named parties in the state court action. A party, for purposes of former adjudication, includes "all who are directly interested in the subject matter and who have a right to make a defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies." In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550-51 (11th Cir. 1990). As a creditor, Merchants & Farmers was, at least, a party in interest to the prior proceeding for res judicata purposes. All creditors of a debtor are parties in interest. Id. at 1551 n.5; See 8 COLLIER ON BANKRUPTCY ¶ 3020.04 (15th ed. 1989). To hold otherwise would defeat the Bankruptcy Code's "strong preference for final resolution of all claims involving the debtor, largely in order for the debtor to obtain a fresh start." Sanders Confectionery Products v. Heller Financial, 973 F.2d 474, 481 (6th Cir. 1992) (citing Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3rd Cir. 1988), cert. denied, 488 U.S. 967, 109 S. Ct. 495, 102 L. Ed.2d 532 (1988)).[11] Accordingly,

---

[11] In Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d at 480-81, following a Chapter 11 proceeding, the court held:

> Other entities, such as creditors and equity security holders in the debtor, must also be considered parties for res judicata purposes. The Bankruptcy Code contains a strong preference for final resolution of all claims involving the debtor, largely in order for the debtor to obtain a fresh start . . . . To interpret the term "party" narrowly would also run counter to the provisions in the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders. (citations omitted).

11

the court concludes that the state court suit involves the same parties as the Chapter 7

bankruptcy.

## B. The Same Cause of Action

In Manning v. City of Auburn, 953 F.2d 1355 (11th Cir. 1992), the Eleventh Circuit

stated the standard for deciding whether the causes of action in two proceedings are the same.[12]

In Manning, the court ruled that "[r]es judicata applies not only to the precise legal theory

presented in the previous litigation, but also to all legal theories and claims arising out of the

same operative nucleus of facts." Manning, 953 F.2d at 1358. The test is one of substance,

not form. I.A. Durbin, Inc. v. Jefferson National Bank, 793 F.2d 1541, 1549 (11th Cir.

1986). In the instant case, the Cobbs' suit in state court relates to the identical matter

addressed in Merchants & Farmers' proof of claim in the bankruptcy court. The Cobbs state

court action alleges violations arising from the very loan agreements made the subject of the

Bank's proof of claim. The court notes that the Cobbs did, however, enter a reaffirmation

agreement with Merchants & Farmers.[13] In any event, and as the Bankruptcy Court stated, the

state suit stems, at least in part, from prepetition dealings. The state court suit is precisely a

claim that the Cobbs might have offered to affect the distribution of assets due their creditors.

In a similar setting, the Fifth Circuit concluded:

> The very gist of this suit is the allegation that the [bankruptcy] arrangement was
> somehow improper. To sanction it would be in effect to reopen the bankruptcy
> proceedings and retry the merits in a collateral proceeding. The fact that it is

---

[12] The Eleventh Circuit has recognized that "the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." NAACP v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990).

[13] This reaffirmation agreement incorporated the original installment contract.

12

> brought under a different label in an independent action cannot camouflage its
> inevitable effect.

Miller v. Meinhard-Commercial Corporation, 462 F.2d 358 (5th Cir. 1972). The decisive

aspects of the claims are the facts. These facts created the Cobbs' purported claims rather than

any legal theories.

The Cobbs argue, nevertheless, that they were unaware of any possible claims against

Merchants & Farmers at the time they filed their bankruptcy case, thereby justifying the

eighteen-month gap between filing for bankruptcy and initiating their state court action. The

court finds this argument unpersuasive. Res judicata acts to bar claims that could and should

have been brought in the earlier proceeding. See Wesch v. Folsom, 6 F.3d 1465, 1471 (11th

Cir. 1993). The state court suit alleges various wrongdoings based on the same loan

transactions later made the subject of the proof of claim. Any alleged wrongdoing on

Merchants & Farmers' part was complete by the time the Bank filed its proof of claim.

Granted, the parties entered a reaffirmation agreement on the debt. This agreement, however,

at least in part, simply incorporated the terms of the original agreement. It seems that this

transaction only gave the Cobbs more of an opportunity to "discover" the wrongs allegedly

committed by Merchants & Farmers. The agreement, furthermore, purported to be a complete

settlement of any claims that possibly existed against the Bank.

In any event, res judicata applies not only to the exact legal theories advanced in the

prior case, but to all legal theories and claims arising out of the same nucleus of operative

facts. Wesch, 6 F.3d at 1471. Accordingly, the court finds that this element satisfied for res

judicata purposes.

### C. Final Judgment on the Merits by a Court of Competent Jurisdiction

The final two elements for res judicata purposes, and perhaps the most debatable, will be addressed together. Merchants & Farmers contends that an arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court. Moreover, the Bank contends, a bankruptcy order allowing a proof of claim is, likewise, a final judgment. The Bank argues, therefore, that res judicata bars any attempt by the parties to relitigate any of the matters that they raised or could have raised in the bankruptcy proceeding.

The Bankruptcy Court noted that Merchants & Farmers cited only the Cobbs' discharge order and the reaffirmation agreement as barring the state court suit. The court further noted that, other than these two documents, the Bank did not specify any particular order of the court that the state court would offend by proceeding. Moreover, the court ruled that the state court suit the motion attempts to halt is a non-core proceeding. This conclusion was used to strengthen the court's ruling that Merchants & Farmers failed to make a "strong and unequivocal showing" of its need for injunctive relief.

Merchants & Farmers, citing Matter of Baudoin, 981 F.2d 736 (5th Cir. 1993), contends, however, that the Cobbs' state court action is a counterclaim to the bank's proof of claim. The Bank argues, therefore, that the action is a core proceeding.

In Baudoin, the creditor bank had a lending relationship with the debtors and their wholly-owned corporation. Baudoin, 981 F.2d at 737. The debtors, individually, and their corporation filed for Chapter 7 bankruptcy. Id. at 738. The court noted that the debtors apparently informed the trustee of a possible claim against the bank early in the bankruptcy proceeding. Id. Eventually, the individual debtors received a discharge. Id. More than three

14

years after their discharge, the individual debtors sued the bank in Louisiana state court

seeking damages for both breach of the loan agreements and related tort claims. Id. The bank

filed exceptions in state court and a separate federal action to enjoin the state action. Id.

On appeal, the Fifth Circuit confronted similar contentions as argued here based on the

core / non-core dichotomy. The court stated that if the claim was not "core", the bankruptcy

court could not have entered a final judgment and instead, could have only made proposed

findings of fact and conclusions of law subject to de novo review by the district court. Id. at

738. The court noted, however, that this fact did not affect the bankruptcy court's jurisdiction

to entertain the claim. Id. Specifically, the court concluded:

> Indeed, pursuant to 28 U.S.C. § 157, bankruptcy jurisdiction exists if the matter
> is simply 'related to' the bankruptcy -- if 'the outcome of that proceeding could
> conceivably have any effect on the estate being administered in bankruptcy.' It
> cannot reasonably be argued that a $4,000,000 claim belonging to a bankruptcy
> estate could not have any conceivable effect on that estate. In short, the
> bankruptcy court had jurisdiction to hear the lender liability claim.

Id. at 738-39.

The court went on to note that 28 U.S.C. § 157(b)(2) includes a nonexclusive list of

"core" matters. The list includes "counterclaims by the estate against persons filing claims

against the estate" and "other proceedings affecting the liquidation of the assets of the estate or

the adjustment of the debtor-creditor . . . relationship." 28 U.S.C. §§ 157(b)(2)(c) and

157(b)(2)(o). In concluding that the debtors should have asserted the state court claim in their

bankruptcy case, the court found that:

> While we recognize that § 157(b)(2)(o) is to be narrowly construed, we are confident that
> the [debtors'] claim is precisely the type which fits within the catch-all provision's narrow
> ambit. It would "affect[ ] the liquidation of the assets of the estate or the adjustment of the
> debtor-creditor . . . relationship" tremendously. See In re Branding Iron Motel, 798 F.2d

15

396, 399 n.3 (10th Cir. 1986) (noting that a controversy over a note and mortgage is "inextricably tied to the bankruptcy proceeding because it affects the liquidation of assets" and is, therefore, core.).

Id. at 742. The court ultimately held that the debtor's state court action fell squarely within the provisions of 28 U.S.C. § 157(b)(2) and, as such, would have been a core proceeding. Id.

This court does not disagree with the Fifth Circuit's rationale regarding core and non-core causes of action. A valid argument exists, moreover, that Cobb's state court suit falls within the catch-all provision's definition of a core proceeding in 28 U.S.C. § 157(b)(2)(o), if not the more specific counterclaim provision of § 157(b)(2)(c). The Eleventh Circuit law, in any event, is that bankruptcy courts may hear "any or all cases under title 11 and any or all core proceedings arising under title 11 or arising in or related to a case under title 11." In re Gallucci, 931 F.2d 738, 741 (11th Cir. 1991) (citing 28 U.S.C. § 157(a)). Bankruptcy courts may not, however, entertain cases involving non-core, unrelated matters. Gallucci, 931 F.2d at 741. The Eleventh Circuit recently addressed the test for relatedness:

The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have effect on the estate being administered in bankruptcy. In other words, an action is sufficiently related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

Matter of Munford, Inc., 97 F.3d 449, 453 (11th Cir. 1996).

The court does not deem it necessary to decide whether Cobb's state court suit would have been a core proceeding because, even if the claim were not, the Cobbs could have brought the claim in the bankruptcy court. The bankruptcy court may hear non-core matters that are "related to a case under title 11. 28 U.S.C. § 157(c)(1). Cobb's state law claim falls within the broad sweep of "related to" jurisdiction because it was a "legal or equitable interest"

of the estate at the time of the petition.  Therefore, the claim could have been asserted at the

time of the bankruptcy proceeding, and this opportunity was sufficient under res judicata

analysis.[14]

The Fifth Circuit in Matter of Baudoin also concluded that a bankruptcy court's order

allowing a proof of claim is a final judgment in a Chapter 7 case.  Matter of Baudoin, 981 F.

2d at 742 (citing Matter of Colley, 814 F.2d 1008, 1010 (5th Cir.), cert. denied, 484 U.S.

898, 108 S. Ct. 234, 98 L. Ed.2d 193 (1987).  That same court had previously stated that:

> Allowance of a claim is a judicial act, which need not but preferably should be
> evidenced by a formal order, by which the claim has been examined and
> determined to be valid.  It is distinguishable from the ministerial act of "filing"
> the claim and the party's act of "proving" it.

Matter of Schwab, 613 F.2d 1279, 1283 (5th Cir. 1980) (noting that the allowance of a claim

should be given the  same preclusive effect as any other judgment of a competent court.).[15]

The Supreme Court, moreover, has ruled that "a creditor who offers a proof of claim and

demands its allowance is bound by what is judicially determined."  Katchen v. Landy, 382

U.S. 323, 334, 86 S. Ct. 467, 475, 15 L. Ed.2d 391 (1966) (noting that "normal rules of res

judicata and collateral estoppel apply to the decisions of bankruptcy courts").  Creditors are

---

[14] See In re INTL Nutronics, Inc., 28 F.3d 965 (9th Cir. 1994) where the court noted the significance of Matter
of Baudoin in stating:

> It is true that the Fifth Circuit has twice ruled that core proceedings could not be given preclusive
> effect upon later non-core claims.  With that position we respectfully disagree, in part because it does
> not take account of the fact that a non-core claim can be asserted in bankruptcy court, even though
> final decision will take place in district court.  Moreover, a recent Fifth Circuit decision casts some
> doubt on the continuing vitality of the [] rule.  See Matter of Baudoin, 981 F.2d 736, 741 & n. 10 (9th
> Cir. 1993).

[15] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

likewise bound when they elect not to take part in the bankruptcy process. This court concludes that no valid reason exists to differentiate the preclusive effect of the allowance of a claim as it applies to a creditor or debtor. The court thus agrees that a bankruptcy court order allowing a proof of claim is a final judgment. An allowed proof of claim, coupled with a grant of discharge, has the effect of a prior judgment for res judicata purposes.

Instructive on this matter is the similar treatment accorded to bankruptcy court decisions in the Chapter 11 context. The Supreme Court long ago established the principle that an order confirming a reorganization plan is a final order for res judicata purposes. Stoll v. Gottlieb, 305 U.S. 165, 59 S. Ct. 134, 83 L. Ed. 104 (1938). Most circuits, including the Eleventh Circuit, have similarly followed this principle. E.g., In re Justice Oaks II, Ltd., 898 F.2d 1544 (11th Cir. 1990). The effect of such an order is the same as a district court's judgment on the merits for claim preclusion purposes. See Stoll, 305 U.S. at 170-71, 59 S. Ct. at 137. In other words, confirmed plans of reorganization are binding on all parties, and res judicata bars all issues that parties could have raised concerning such plans. A debtor, therefore, may not fail to object to a creditor's claim and subsequently attack that claim in a collateral proceeding. The court can discern no reason why the result should be any different in the analogous Chapter 7 context.[16]

The underlying policies of the Bankruptcy Code support the court's conclusion that there was a final judgment rendered by a court of competent jurisdiction. In light of this conclusion, the strong words of the Fifth Circuit bear repeating at length:

---

[16] The court acknowledges the Supreme Court's language in Celotex Corp. v. Edwards, ___ U.S. ___, 115 S. Ct. 1493, 1499, 131 L. Ed.2d 403 (1995), indicating that bankruptcy jurisdiction may be broader in reorganization cases than in liquidation but concludes that its analogy is consistent.

18

This court has previously recognized the important interest in the finality of judgments in a bankruptcy case. In promoting that interest, we have applied our traditional test for res judicata in the bankruptcy context: "An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court. Any attempt by the parties to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of res judicata. As stated by the Second Circuit in a case quite similar to this case, . . ."[r]estraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of res judicata first evolved. Of course, in the bankruptcy context, especially a Chapter 7 liquidation, that bite is to be taken as expeditiously and economically as possible, to try to ensure, inter alia, that creditors get their share. After all, it has long been the "general spirit and purpose" of bankruptcy not only to release a bankrupt from the obligation to pay his debts, but also to "secure a just distribution of the bankrupt's property among his creditors." In sum, the numerous and substantial reasons for the doctrine of res judicata are too well known, and obvious, to bear repeating. And, they are all the more compelling today, especially for bankruptcy, and related proceedings. Because of spiraling litigation costs, increasingly congested courts -- especially bankruptcy courts -- and expanding theories of recovery . . . it is more imperative than ever that the doctrine of res judicata be applied with unceasing vigilance.

Matter of Baudoin, 981 F.2d 736, 739-40 (5th Cir. 1993) (citations omitted).[17]

The court concludes that the doctrine of res judicata bars the Cobbs' state court action. The Bankruptcy Court's order allowing the Bank's proof of claim and subsequent grant of discharge satisfy res judicata requirements of a final judgment on the merits by a court of competent jurisdiction. Allowing the state court litigation to continue would have the practical effect of undermining the import of the bankruptcy procedure. Even where an action has an independent objective and seeks other relief, that action is a collateral attack if the ultimate result overrules or weakens a previous judgment. As the Cobbs state court action revolves around what could or should have been raised in the bankruptcy proceeding, that action is accordingly barred by res judicata.

---

[17] The Second Circuit implicitly approved the Baudoin court's rationale in In re Porges, 44 F.3d 159, 165 (2nd Cir. 1995) (noting that an order allowing a proof of claim constitutes a final judgment).

### IV. Judicial Estoppel

Merchants & Farmers also contends that judicial estoppel bars Cobb's state court action. The Bank contends that a debtor discharged in a Chapter 7 bankruptcy proceeding is judicially estopped from later asserting a claim not listed in the bankruptcy proceeding if the debtor should have known of its existence. The only authority the Bank cites for this proposition, however, is Alabama case law. Had this case originated as a diversity action, the court would be bound to apply the relevant Alabama formulation of judicial estoppel. Where federal issues are involved, however, the court may look to common law or to the policies supporting the doctrine itself for guidance in establishing an appropriate formulation. Chrysler Credit Corp. v. Rebhan, 842 F.2d 1257, 1261 (11th Cir. 1988) (citing Allen v. McCurry, 449 U.S. 90, 96, 101 S. Ct. 411, 415, 66 L. Ed.2d 308 (1980); 1B James W. Moore, Moore's Federal Practice ¶ 0.405[8] (1974)).

An exact definition of judicial estoppel is difficult to phrase. An important distinction to maintain, however, is that judicial estoppel is distinct from res judicata and collateral estoppel, though the distinction is often blurred. Res judicata and collateral estoppel relate to the effect of a final judgment that later precludes relitigation on matters decided and necessary to the outcome. Courts do not base judicial estoppel, however, on finality of judgments. One commentator has explained the theory as follows:

> There are cases in which the doctrine of collateral estoppel has been applied that seem more easily explained on the basis of the preclusion doctrine. And there are cases in which the preclusion doctrine is characterized as a branch of equitable estoppel. Many cases, however, have recognized that independent of res judicata, collateral estoppel, or equitable estoppel traditionally conceived, a litigant is not completely free to argue whatever state of facts seems advantageous at a point in time, and a contradictory state whenever self-interest may dictate a change. As it has been put in a number of cases, one may not play "fast and loose" with the judicial process. This principle has been applied,

20

for example, to preclude changes in position in successive stages of the same litigation, and to dismiss a complaint alleging a state of facts inconsistent with a position taken in a prior litigation.

1B JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.405[8] (2d ed. 1995); See DeShong v. Seaboard Coast Line R.R. Co., 737 F.2d 1520, 1522 n.5 (11th Cir. 1984).

Under the present facts, the debtor plainly assumes a position inconsistent to that taken in the earlier bankruptcy proceeding. Implicitly, if not explicitly, Cobb would have the court sanction a practice in which debtors initially conceal ripe claims, avoid their creditors, and start afresh. Only later, after receiving the benefits of the bankruptcy process, would the debtor "realize" his claims against the creditor he once sought to escape. This practice would undermine the integrity of the system that the doctrine of judicial estoppel protects. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988). The court accordingly concludes that Cobb's state court action against Merchants & Farmers is likewise barred by judicial estoppel for Cobb's failure to list his claim originally.

### V. The Anti-Injunction Act

The Bankruptcy Court concluded, and the Cobbs contend, that the anti-injunction statute, 28 U.S.C. § 2283, prohibits a federal court from enjoining the state court. The Anti-Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where

21

necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

This statute acts as a total bar against a federal court injunction of state court proceedings,
unless the injunction falls within one of the specifically defined exceptions in the statute.
Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286, 90 S.
Ct. 1739, 1743, 26 L. Ed.2d 234 (1970). "Because of the sensitive nature of federal
interference with state court litigation, the exceptions to the rule against injunctions . . . must
be narrowly construed . . . . Accordingly, the party seeking the injunction must make a
'strong and unequivocal showing' of relitigation." Delta Air Lines, Inc. v. McCoy
Restaurants, Inc., 708 F.2d 582, 585-86 (11th Cir. 1983).

### A. Necessary In Aid of Jurisdiction

The original purpose of this exception was "to make clear the recognized power of the
Federal courts to stay proceedings in State cases removed to the district courts." Maseda v.
Honda Motor Co., Ltd., 861 F.2d 1248, 1254 (11th Cir. 1988). The Eleventh Circuit has
expanded the extent of this exception to include cases where a federal court enjoins a state
court after the federal court enters a final judgment in a case. See, e.g., Battle v. Liberty
National Life Ins. Co., 877 F.2d 877 (11th Cir. 1989). As noted by the Eleventh Circuit in
Battle, the United States Supreme Court has stated that the "necessary in aid of" jurisdiction
exception to the general ban on federal injunctions is properly invoked "to prevent a state court
from so interfering with a federal court's consideration or disposition of a case as to seriously
impair the federal court's flexibility and authority to decide that case." Battle, 877 F.2d at
880 (citing Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281,

22

295, 90 S. Ct. 1739, 1747, 26 L. Ed.2d 234 (1970)).

Under the present facts, the Bankruptcy Court entered an order on October 12, 1994 discharging the Cobbs of all personal liability for their dischargeable debts. Subsequently, on November 2, 1994, the court approved the trustee's report and the Cobbs' chapter 7 case was closed. More than eighteen months later, Mr. Cobb "discovered" the Banks alleged wrongful conduct and filed suit in state court. In practice, though not in form, Cobb challenges the propriety and finality of the bankruptcy court proceedings.

"A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3rd Cir. 1988) (citing In re Hannan, 127 F.2d 894 (7th Cir. 1942). Further, the goal of bankruptcy is finality. See Oneida, 848 F.2d at 417. Allowing the state court action to continue would contravene both the debtor's duties to the bankruptcy court and the finality of the liquidation process. The state court action now pending is a collateral attack under different legal theories that will frustrate and seriously impair the Bankruptcy Court's flexibility and authority to decide its case initially and finally. That Merchants & Farmers can plead various affirmative defenses in the state court does not weaken the "strong and unequivocal showing" necessary for federal court intervention. Instead, it seems incongruous to this court that a debtor can be absolved of all liability on his debts and later attack the foundation upon which he received his discharge. The court concludes, therefore, that an injunction is proper and necessary in aid of the bankruptcy court's jurisdiction.

23

## B. The Relitigation Exception

The "relitigation exception" is an aspect of the "protect or effectuate its judgments"

exception to the Anti-Injunction Act. This exception is essentially a res judicata concept

designed to prevent issues tried in federal court from being relitigated in state court. Wesch v.

Folsom, 6 F.3d 1465, 1471 (11th Cir. 1993).[18] Instead of harming principles of federalism

and comity, this exception can strengthen those principles. Int'l Ass'n of Machinists &

Aerospace Workers v. Nix, 512 F.2d 125 (5th Cir. 1975). "Nothing would be as productive

of friction between the state and the federal courts as to permit a state court to interpret and

perhaps to upset . . . a judgment of a federal court." Id. at 130.

The court has concluded that res judicata bars Cobb's state court action because Cobb

could and should have brought this claim in the bankruptcy proceeding. The court relies

heavily on this conclusion as support for its current holding that an injunction is proper here

under the "relitigation exception." At the same time, the court is mindful of the Eleventh

Circuit's ruling in Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582 (11th Cir.

1983), and raises the case on its own initiative.

In Delta Air Lines, ten airlines serving Orlando, Florida sought to enjoin McCoy

Restaurants, Inc. (McCoy) from prosecuting a state court action challenging the legality of

lease agreements between the airlines and the Greater Orlando Aviation Authority. Delta Air

Lines, Inc., 708 F.2d at 583. The central dispute concerned lease agreements between the

airlines and the Aviation Authority that contained a concession policy that threatened McCoy's

---

[18] As noted previously, res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts. Wesch, 6 F.3d at 1471.

exclusive right to sell concessions at the Orlando Airport. Id. at 583. Six separate lawsuits, state and federal, were filed. Id. The Airlines based the need for an injunction on their contention that the claims raised by McCoy in state court had been litigated in a federal antitrust action brought by McCoy. Id. at 586.

In answering this question, the Eleventh Circuit adopted the district court's rationale. The court ruled that while the state court litigation might eventually reveal an identity of issues, the airlines failed to make a strong and unequivocal showing of relitigation. Id. The court further concluded that the validity of the leases under state constitutional law was an independent question from whether the agreements amounted to an unreasonable restraint of trade violating federal antitrust law and from whether state action immunity precludes antitrust liability. Id. The airlines argued, however, that even if the state court claims were not raised in the antitrust action, they could and should have been. Id. Therefore, the airlines argued, res judicata applied and a federal court injunction of the state litigation was proper. Id.

In denying the federal injunction, the court noted that the airlines' argument was tenable but directed to the wrong forum. Id. The court concluded:

> The suggested analysis may justify a Florida court in dismissing the state action on res judicata grounds. Under the relitigation exception to the Anti-Injunction Act, however, a federal court may enjoin the state proceeding only if necessary to protect or effectuate its own judgment. 28 U.S.C.A. § 2283; cf. 1A Pt.2 J. Moore, W. Taggart, A. Vestal & J. Wicker, Moore's Federal Practice ¶ 0.208a[3], at 2341 (2d ed. 1982) (relitigation exception is used to prevent a federal court's judgment from being effectively nullified by a later contrary decision). A federal court's judgment is presumably far more threatened if the state proceeding involves the same issues than if it involves only issues that could have been, but were not, raised. In this particular case we fail to see how a state court ruling that the airline agreements violate state constitutional law could undermine the integrity of the federal court ruling that the agreements do not violate federal antitrust law.

Id. This language suggests that a federal court should not grant an injunction under the

25

relitigation exception where issues could have been, but were not, raised in the prior federal
action. The court, however, went on to distinguish a former Fifth Circuit case that upheld the
principle of a federal injunction of state proceedings concerning claims that could have been,
but were not, raised in a previous federal action. Id. at 587. The court stated as follows:

> Woods Exploration[19] is distinguishable on two significant bases. First, the district court in
> Woods Exploration granted the injunction; here, the court did not. A district court has
> discretion in determining whether federal interference with state proceedings is warranted.
> Within the limits of that discretion, a district court in a given case might go either way and
> not be reversed. While Wood Exploration perhaps stands for the proposition that district
> courts may in some circumstances enjoin state proceedings involving claims that could
> have been raised in federal court, it certainly does not signify that district court must do
> so. Second, the federal and state court claims in Woods Exploration were virtually
> identical. The federal action alleged a violation of federal antitrust law through a
> conspiracy to eliminate plaintiffs as competitors, and the state action charged a violation of
> state antitrust law through seemingly the same conspiracy. Because the "same primary
> rights" were involved, a federal court could reasonably fear that a state court
> determination of liability might effectively nullify the prior federal court determination of
> nonliability. Here, by contrast, the state constitutional claims do not appear to parallel the
> federal antitrust claims.

Id.

The court concludes that, within the limits of its discretion, an injunction here is proper
under the relitigation exception. Cobb's state court claims, as previously discussed, are
identical to those that he should have asserted in the bankruptcy proceeding against the Bank to
affect the distribution of assets. Otherwise, a state court determination against Merchants &
Farmers would disrupt and effectively nullify the prior bankruptcy proceeding. Such a result
necessarily undermines the pinnings that the bankruptcy process is founded on -- settling all
debts and disputes conveniently and efficiently in a singular forum.

A federal injunction in this instance does not attack a mere ruling as in Delta Air Lines

---

[19] Woods Exploration & Producing Co. v. Aluminum Co. of America, 438 F.2d 1286 (5th Cir. 1971), cert.
denied, 404 U.S. 1047, 92 S. Ct. 701, 30 L. Ed.2d 736 (1972).

but instead protects an entire process. Considering the consequences conceivably stemming from a state decision imposing liability on Merchants & Farmers, the court rules that an injunction is appropriate to preserve the integrity of the earlier bankruptcy proceeding and to prevent relitigation of matters that could and should have been brought there.

Within 10 days the Appellant will submit a proposed appropriate order, along with a memorandum suggesting the propriety of such an order. The Appellees may respond within 10 days. The parties should address whether this court should issue the injunction or whether the cause should be remanded to the Bankruptcy Court for it to issue the injunction. This court does not reach the issue of whether it would be appropriate for the Bankruptcy Court to re-open its case for further adversary proceedings.

This _29_ day of _Jan_, 1997.

Robert B. Propst
United States District Judge

27